

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

CHARLES POSNANSKI,           )
                             )     AZ 02-2010 PHX (JWS)
          Plaintiff,         )
                             )     <u>ORDER FROM CHAMBERS</u>
     vs.                     )
                             )     [Re:   Motions at Docket Nos. 110,
WILLIAM GIBNEY, *et al.*,     )            112, 115, 118, and 121]
                             )
          Defendants.        )
_____)

## I.  MOTIONS PRESENTED

At docket 112, defendants William Gibney and Gibney & Associates ("Gibney

defendants") move for summary judgment, asserting that plaintiff Charles Posnanski's

claims are barred by Arizona's two-year statute of limitations.  Defendant XL Specialty

Insurance Company ("XL") joins this motion at docket 136.  At docket 110, defendant

XL moves for summary judgment, arguing that Posnanski cannot bring a direct action

against it under Arizona law.  At docket 115, the Gibney defendants move for summary

judgment on the ground that Posnanski fails to establish a *prima facie* case.  In

addition, at docket 118, the Gibney defendants move to compel production of

Posnanski's official tax records and, at docket 121, defendants seek to bar Posnanski

from offering testimony of his proposed expert, attorney Ralph Cagle.  Posnanski



opposes all of these motions.  Oral argument was heard telephonically on June 6, 2003.

## II. BACKGROUND

### A. Posnanski's Investments

This is a legal malpractice action arising out of estate planning services rendered by the Gibney defendants.  Jurisdiction arises under 28 U.S.C. § 1332.  From 1976 to 1996, Posnanski was the owner and president of a bank in the small town of Manawa, Wisconsin.  In 1995, Posnanski pled guilty to filing fraudulent tax returns with the Internal Revenue Service for the years 1989 through 1993.[1]  He was sentenced to serve one year and one week in federal prison, followed by three years of supervised release.  Just before his sentencing, Posnanski changed his residency from Wisconsin to Wyoming.[2]

Posnanski was imprisoned in Colorado from March 1996 through February 1997.  After his release from prison, Posnanski began his period of supervised release.  The judgment required Posnanski to be physically present in Wisconsin during his term of supervised release.  As Posnanski puts it: "because I was on supervised release I spent nearly all of my time in Wisconsin, although I had no intention of resuming my

---

[1]Affidavit of Charles Posnanski (signed copy at doc. 137, original filing at doc. 132, Ex. A), ¶ 3 ("Posnanski Aff.").

[2]Posnanski Aff., ¶ 5.

residency there."[3]  The conviction also meant Posnanski could no longer own the bank stock, so in 1996 the stock was sold.[4]  In 1997, Posnanski and his wife were divorced. Ultimately, Posnanski was left with net assets of just over $4 million after paying taxes, property settlements from the divorce, and legal fees.[5]

Posnanski then sought to invest these proceeds, in connection with which he engaged the services of Gibney.  Posnanski made three separate investments: an investment of $1 million in International Strategy through the creation of a charitable remainder unitrust ("CRUT"), which was used to purchase debentures in a company called Lendco, Inc.; an investment of $1.2 million in a company called NCC, Inc. through a company formed by Posnanski; and, finally, an investment of $1 million by way of a corporate entity, Strong International, which pooled money and invested it in Listro, Inc.  Posnanski alleges that, as a result of Gibney's failure to advise him of the risk associated with these investments, his failure to disclose his conflicts of interest, and his failure to adequately protect his investment, Posnanski lost much of the money he invested.

---

[3]*Id.,* ¶ 6 (emphasis added).  At oral argument, Posnanski's counsel agreed that, at all relevant times, Posnanski was a resident of Wyoming, although he was often present in Wisconsin.

[4]Posnanski Aff., ¶ 4.

[5]Posnanski Aff., ¶¶ 8, 9.

**B. Procedural History and Transfer Order**

On June 6, 2002, Posnanski filed an amended complaint in the U.S. District Court for the Western District of Wisconsin.[6]  The complaint asserts three claims against the Gibney defendants: (1) negligent provision of legal services, (2) breach of contract, and (3) breach of fiduciary duty.[7]  XL was also named as a defendant, but no independent claim was pled against XL.  Rather, it was simply alleged that judgment on the claims against the Gibney defendants should also be entered against XL.

Defendants moved to dismiss the action in Wisconsin for lack of personal jurisdiction and improper venue, and moved to stay proceedings pending arbitration or, alternatively, for summary judgment.[8]  At docket 81, the district court in Wisconsin issued an order addressing defendants' motions.  The order includes a recitation of the following facts among others: Aside from his relationship with Posnanski, Gibney has had no contact with Wisconsin.  When Posnanski completed and mailed the "Estate Fact Finder Form" to Gibney, he used an address in King, Wisconsin, but Posnanski included a statement regarding his residence which said, "My state of residence is 306 E. 18 the Street #23, Cheyenne WY 82001."[9]  Subsequent communications between Gibney and Posnanski were through King address and a King phone number.

---

[6]The initial complaint was filed on March 26, 2002.

[7]Doc. 11.

[8]Doc. 81, at 1.

[9]*Id.* at 2.

4

The Wisconsin district court first considered the issue of personal jurisdiction, but did not resolve the issue: "Notwithstanding the apparent lack of personal jurisdiction, the Court need not definitively resolve the issue because personal jurisdiction is not a prerequisite to transfer of venue under 28 U.S.C. § 1404(a)."[10]  The Wisconsin court noted that, although defendants may have waived their right to transfer under 28 U.S.C. § 1406(a), transfer under § 1404(a) was appropriate in this case because personal jurisdiction was much in doubt.[11]  Finally, the court noted that the local law of Arizona applies.[12]

### III.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[13]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[14]  Once the moving party has met this burden, the nonmoving party must

---

[10]*Id.* at 9.

[11]*Id.* at 9-10.

[12]Doc. 81, at 11.  The meaning of this statement is unclear.  It is possible that it is meant to signify the court's determination that, because Wisconsin lacks personal jurisdiction, Arizona law must apply.  On the other hand, it is equally plausible that it is intended to reflect the court's judgment that under Wisconsin choice of law principles, Arizona law would apply.

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14]*Id.* at 323-25.

set forth evidence of specific facts showing the existence of a genuine issue for trial.[15]

All evidence presented by the non-movant must be believed for purposes of summary

judgment, and all justifiable inferences must be drawn in favor of the non-movant.[16]

However, the nonmoving party may not rest upon mere allegations or denials, but must

show that there is sufficient evidence supporting the claimed factual dispute to require a

fact-finder to resolve the parties' differing versions of the truth at trial.[17]


## IV.  DISCUSSION

### A.  Statute of Limitation and Choice of Law

Defendants argue that Arizona law, and specifically Arizona choice of law

provisions and the pertinent Arizona statute of limitations apply to the case at bar.

Posnanski, on the other hand, insists that Wisconsin's substantive law applies because

Wisconsin was the initial forum.

This case was transferred to this district pursuant to 28 U.S.C. § 1404(a).

Ordinarily, following a "convenience" transfer pursuant to § 1404(a), the transferee court

applies the law of the state in which the action was originally filed, which in this case

would be Wisconsin.[18]  However, when a case is transferred from a district which could

---

[15]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[16]*Id.* at 255.

[17]*Id.* at 248-49.

[18]*See Van Dusen v. Barrack*, 376 U.S. 612, 637-39 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

not obtain personal jurisdiction over the defendant, the transferee court must apply the choice of law rules of the state in which it sits.[19]  Thus, defendants argue that because Wisconsin did not have personal jurisdiction, Arizona law applies.

In order to assert personal jurisdiction over a nonresident defendant, there must exist a statutory basis for jurisdiction, and the nonresident defendant must have sufficient "minimum contacts" with the forum state such that due process is satisfied.[20] Wisconsin's long-arm statute provides for personal jurisdiction over a non-resident who injures a person within Wisconsin where "[s]olicitation or service activities were carried on within [Wisconsin] by or on behalf of the defendant."[21]  Defendants rely primarily on the district court's order at docket 81 in support of their argument that personal jurisdiction was lacking.  While Judge Shabaz noted that personal jurisdiction was "doubtful," he did not decide the issue.

This court also need not decide the issue of personal jurisdiction because regardless of whether Arizona or Wisconsin law choice of law principles govern, Arizona's statute of limitation applies.  Under Wisconsin law, its own statute of limitation would apply unless the Wisconsin borrowing statute is triggered.[22]  Wisconsin's borrowing statute provides: "[i]f an action is brought in this state on a foreign cause of

---

[19]*See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993).

[20]*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (jurisdiction must be consistent with "traditional notions of fair play and substantial justice").

[21]WIS. STAT. § 801.05(4)(a).

[22]*Terranova v. Terranova*, 883 F. Supp. 1273, 1277 (W.D. Wis. 1995).

7

action and the foreign period of limitation which applies has expired, no action may be maintained in this state."[23]  It effectuates the legislative policy that the shortest possible limitation period should govern in order to eliminate any incentive of a plaintiff to forum shop for a more favorable limitation.[24]  A cause of action is a "foreign cause of action" for purposes of the borrowing statute if the underlying injury occurred outside the state.[25]  In the case of personal injury actions, the location of the injury is the state where the accident occurred.[26]  However, determining whether an action is a foreign cause of action in a case like the one at bar where the claim is for purely economic loss is more difficult.

Posnanski argues that this action is not covered by the borrowing statute, because the factors discussed in *Air Product and Chemicals, Inc. v. Fairbanks Morse, Inc.*[27] establish that the statute is inapplicable.  However, that case was decided before the enactment of the borrowing statute in 1979 and has since been found inapplicable to the borrowing statute.[28]  Relevant cases support the conclusion that the borrowing statute does apply.  In *Terranova*, a federal district court explained that the place of injury for the purposes of the borrowing statute in the case of purely economic injury is

---

[23]WIS. STAT. §  893.07(1).

[24]*Terranova*, 883 F. Supp. at 1277; *Guertin v. Harbour Assur. Co. of Bermuda, Ltd.*, 415 N.W.2d 831, 835 (Wis. 1987).

[25]See *Faigin v. Doubleday Dell Pub. Group, Inc.*, 98 F.3d 268, 269 (7th Cir. 1996).

[26]*Guertin,* 415 N.W.2d at 834.

[27]206 N.W.2d 414, 418 (Wis. 1973).

[28]*See Guertin*, 415 N.W.2d at 835.

normally the plaintiff's state of residency.[29]  Under this logic, Wyoming's statute of

limitation applies because, at all relevant times, that has been the state of Posnanski's

residence.

In *Ristow v. Threadneedle Insurance Company, Ltd.,*[30] a Wisconsin appellate

court looked at the matter in a different way, but nonetheless concluded that the cause

of action was a "foreign cause of action," because the last significant event giving rise

to the claim took place in another state.[31]  Utilizing this logic, Arizona's statute of

limitation still applies because all of Gibney's alleged acts or omissions giving rise to the

complaint took place in Arizona.

Posnanski argues that because his bank accounts were in Wisconsin the place

of injury is Wisconsin.  However, it makes little sense to say that the location of a bank

account, as opposed to the residence of the account owner, should be a determining

factor.  After all, it is the account owner who actually suffers loss.  Even assuming the

location of Posnanski's bank accounts should be considered,  it is clear that the losses

were not losses to those accounts, but, rather, were losses to the CRUT and the other

entities Posnanski created outside Wisconsin.

---

[29]883 F. Supp. at 1278-79.

[30]583 N.W.2d 452 (Wis. Ct. App. 1998).

[31]*Id.* at 453; *see also Abraham v. General Cas. Co. of Wisconsin*, 576 N.W.2d 46, 54
(Wis. 1998) (concluding action was not foreign action where the insurance company's decision
to deny recovery under the policy was the action giving rise to the claim, which took place in
Wisconsin).

Utilizing either the *Terranova* or *Ristow* cases, it is clear that the borrowing statute applies and that the statute of limitation is two years, for both the Arizona and Wyoming statutes establish a two-year limitation period.  In any event, given that *Ristow* was decided by a Wisconsin state appellate court and is the more recent decision, this court will follow *Ristow* rather than the district court decision in *Terranova*.  It follows that the Arizona statute applies.

### 1.  Accrual of the Cause of Action under Arizona's Statute of Limitation

Under Arizona Revised Statute ("A.R.S.") § 12-542, tort actions for negligence and breach of fiduciary duty are subject to a two-year statute of limitation.  That is, plaintiff must file suit within two years from the time that the action accrues.  An action accrues when (1) plaintiff knows or reasonably should have known of his attorney's negligent conduct and (2) when plaintiff's damages are ascertainable.[32]  The determination of accrual is, generally, a factual question that focuses on plaintiff's knowledge of the events and the injuries, whom the plaintiff believes is responsible, and plaintiff's diligence in pursuing the claim.[33]

Defendants correctly rely on a letter written by Posnanski in support of their claim that the statute of limitations began to run on March 18, 2000.  The letter shows that Posnanski believed Gibney had acted negligently and that he had been injured.  Posnanski's letter begins by stating that he "dislike[s] writing this letter because I had lots of trust in your ability, but I am devastated mentally and financially by the latest of

---

[32]*Glaze v. Larsen,* 55 P.3d 93, 95 (Ariz. Ct. App. 2002) (citations omitted).

[33]*Doe v. Garcia*, 5 F. Supp. 2d 767, 774 (D. Ariz. 1998).

several debacles!"[34]  He then details the investments he made, explaining that Gibney

had told him there was "no risk" and these were "good investments," and adds that his

investments are all worthless now.  He concludes the letter by stating:

> You have depleted my life earnings.  I have no alternative to turn to
> any source of relief in order to recover my money so I can survive. I
> do not care what happens to all the people involved in these
> schemes, all I want is all of my funds back NOW!  I therefore would
> appreciate the names, addresses and telephone numbers for the
> following:
>
> 1.  Any bonding, malpractice, liability and the like insurance policies
> that you and your firm have including those of William Bradley
> Senior and Junior.
> 2.  The State of Arizona Trade and Consumer Protection Division
> or the like thereof,
> 3.  The State of Arizona Bar Association
> 4.  The City of Phoenix and State of Arizona Better Business
> Bureau
> 5.  The State of Arizona Department of Financial Institutions,
> Division of Securities, or the like thereof.
> 6.  Any other sources for recovery.

The language of this letter shows that on March 18, 2000, Posnanski knew that he had

suffered harm and that defendants were responsible for that harm through some sort of

negligent or, perhaps, intentional act.

Posnanski argues that this letter does not establish the date of accrual for two

reasons, neither of which is convincing.  Posnanski first argues that the language of the

letter, "indicates that Posnanski was uncertain as to whether he had lost funds [and]  in

what amount."[35]  However, it is not necessary that Posnanski knew the precise total of

_____

[34]Letter (Doc. 132, Ex. 24).

[35]Doc. 133, at 10.

11

his losses.[36]  Posnanski is also incorrect that the language of the letter shows uncertainty as to the loss of the funds.  On the contrary, the letter states that his funds in the CRUT have disappeared, his investment in General Environmental Corporation investment is worthless, and that defendants depleted his life earnings.[37]  These statements cannot be fairly construed to say anything, if not to say that Posnanski knew he had suffered losses.  Further, Posnanski argues that the letter expresses uncertainty as to fault.  Posnanski is correct that the letter never expressly states that Gibney is at fault.  However, the fact that the letter carefully details the recommendations Gibney made and then requests the names of the malpractice insurer and state offices regulating attorney conduct shows that he clearly considered Gibney to have erred. The letter amply demonstrates that Posnanski believed his damages resulted from defendants' negligence, which is all that is required under Arizona law.[38]

The letter demonstrates that Posnanski's action accrued no later than March 18, 2000.  However, he waited until March 26, 2002, to file suit.  Posnanski's tort and breach of fiduciary duty claims are barred unless the statute of limitations does not apply.

---

[36]*CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.,* 7 P.3d 979, 982-83 (Ariz. Ct. App. 2000) (accrual only requires actual or constructive knowledge, not the total extent or calculated amount of damages).

[37]Doc. 132, Ex. 24, at 1.

[38]*Doe v. Roe,* 955 P.2d 951, 961 (Ariz. 1998) (plaintiff need not know all facts, just enough to identify the wrong).

12

## 2.  Equitable Estoppel

Posnanski argues that defendants are equitably estopped from asserting the statute of limitations.  Specifically, Posnanski argues that Gibney knew of his own conflicts of interest and other failures and then, after receiving the March 18 letter, intentionally sought to convince Posnanski not to sue him.  A defendant may be estopped from asserting the statute of limitations if, by his own conduct, he induces a plaintiff to forego litigation by leading him to believe settlement or adjustment will occur without litigation.[39]  Equitable estoppel requires proof of four elements:

> (1) the party to be estopped must know the facts;
> (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe it is so intended;
> (3) the latter must be ignorant of the true facts; and
> (4) he must rely on the former's conduct to his injury.[40]

In order to create an estoppel, defendant's conduct must be so misleading as to cause plaintiff's failure to file suit.[41]

Gibney wrote to Posnanski on March 20, 2000, and numerous times thereafter, trying to assuage Posnanski's concerns.  The issue is whether the statements in the letters reasonably caused Posnanski to delay filing suit.  Nothing in Gibney's communications is so misleading that it provides sufficient basis for invoking the doctrine of estoppel, because none of Gibney's statements constitute promises which

---

[39]*Roer v. Buckeye Irr. Co.*, 809 P.2d 970, 972 (Ariz. Ct. App. 1990).

[40]*Freightways, Inc. v. Arizona Corp. Comm'n*, 630 P.2d 541, 543 (Ariz. 1981).

[41]*Roer*, 809 P.2d at 972.

could induce Posnanski to wait.  His statements merely express hopes and wishes, and report on actions that were occurring.[42]  The fact that Posnanski filed suit shortly after receiving one of the letters further demonstrates that he was not relying on Gibney's assurances.

### 3. Fraudulent Concealment

Posnanski next argues that Gibney fraudulently concealed the cause of action, thus delaying accrual of the claim.  Posnanski argues that, at the very least, there is a dispute of fact concerning whether the doctrine applies.  Under Arizona law, wrongful concealment tolls the statute of limitations.[43]  That is, the statute of limitations does not begin to run until a defendant's concealment of the "wrong constituting the cause of action is or should be discovered."[44]  Concealment does not exist, however, if "there is [only] a difference of opinion concerning the standard of care" or failure to "divulge some adverse criticism."[45]  Nor is mere denial of wrongdoing wrongful concealment.[46]

The real question is whether the defendant "wrongfully concealed facts giving rise to the cause of action in such a manner as to prevent a plaintiff from reasonably discovering a claim exists."[47]  Here, Posnanski alleges that Gibney did not disclose

---

[42]*See, e.g.,* Letter dated March 20, 2000 (Doc. 132, Ex. 18).

[43]*Mohave Elec. Co-op., Inc. v. Byers*, 942 P.2d 451, 469 (Ariz. Ct. App. 1997).

[44]*Acton v. Morrison*, 155 P.2d 782, 784 (Ariz. 1945).

[45]*Walk v. Ring*, 44 P.3d 990, 1000 (Ariz. 2002).

[46]*Clark v. Airesearch Mfg. Co. of Arizona, Inc., a Div. of Garrett Corp.*, 673 P.2d 984, 987 (Ariz. Ct. App. 1983).

[47]*Anson v. American Motors Corp.*, 747 P.2d 581, 587 (Ariz. Ct. App. 1987).

various facts which go to the underlying claim of malpractice.  However, as discussed above, the letter that Posnanski sent to defendants on March 18, 2000, shows that he was already aware that a wrong had occurred that caused him to be injured.  Thus, the letter itself shows that Gibney did not conceal the existence of facts which prevented discovery of the claim.  Posnanski knew enough facts at the time he wrote the letter to know he had been wronged.

## B.  *Prima Facie* Case of Breach of Contract

At docket 115, defendants move for summary judgment arguing that Posnanski fails to make a *prima facie* case under any legal theory.  Having established that Posnanski's negligence and breach of fiduciary duty claims are time barred under Arizona law, the only remaining claim is the claim for breach of contract.  Posnanski's breach of contract claim, as set forth in the amended complaint, alleges that, pursuant to the agreement to provide legal services and advice, Gibney had an obligation to put Posnanski's interests above his own and that he failed to do so, causing significant financial injury to Posnanski.[48]

Defendants argue that Posnanski fails to establish a *prima facie* case of breach of contract because the referenced agreement is a fee agreement, which cannot serve as the basis for his claim.  Further, defendants argue that the agreement does not impose the duty, either explicitly or implicitly, that Posnanski alleges it does.  Posnanski attempts to show that issues of fact remain concerning the negligence and breach of

---

[48]Amended Complaint, ¶¶ 19-22.

fiduciary duty claims.  However, he fails to even mention the contract claim and whether there are issues of fact concerning the duty imposed by the express terms of the contract.

Under Arizona law, a retainer agreement cannot form the basis for a malpractice action based on breach of contract.[49]  The referenced agreement is clearly entitled a "Fee Agreement."  As a retainer agreement, it cannot serve as the basis for this action. Regardless, even if it could, Posnanski's claim fails because nowhere in the contract is there a statement of the duty that Posnanski alleges was violated - the duty to put Posnanski's interests above Gibney's.[50]  Because a breach of contract action can only be based on a specific promise in a contract, Posnanski's breach of contract claim fails.[51]  Having dismissed all three of Posnanski's claims, there is no need to evaluate the merits of XL's motion at docket 110 concerning a direct action.

---

[49] *Towns v. Frey*, 721 P.2d 147, 149 (Ariz. Ct. App. 1986) (citing *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100 (9th Cir. 1978)).  It appears that there is no dispute that Arizona law applies here as both parties argue the merits of the motion under Arizona law.

[50] Fee Agreement (Doc. 132, Ex. 9).

[51] *See Towns*, 721 P.2d at 149; *Collins v. Miller & Miller, Ltd.*, 943 P.2d 747, 755 (Ariz. Ct. App. 1996).  Even if there was such a promise, it lacks the requisite specificity to support a breach of contract claim. *Collins*, 943 P.2d at 755.

## V.  CONCLUSION

For the reasons stated above, the Gibney defendants' motion for summary judgment at docket 112, which is joined by XL at docket 136, is **GRANTED**, the Gibney defendants' motion for summary judgment at docket 115 is **GRANTED**, and the motion at docket 110, therefore, is **DENIED** as moot.  Further, the motions to compel at docket 118 and the motion *in limine* at docket 121 are **DENIED** as moot.

DATED at Anchorage, Alaska this 20th day of June 2003.

JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE